THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A CRIMINAL COMPLAINT FOR MARCOS DEL VALLE | ) CASE NO.:  1:19mj3288 ) ) ) ) ) MAGISTRATE JUDGE THOMAS M. ) PARKER ) |

# **INTRODUCTION**

I, Steven B. Farnsworth, a Special Agent with the Federal Bureau of Investigation (FBI), (hereinafter Affiant) being duly sworn, deposes and states:

1. Affiant has been a Special Agent with the FBI since 2012, currently assigned to the Cleveland Field Office and to the Organized Crime Squad within that office.

2. Affiant is the case agent on this investigation and, as such, is fully familiar with the facts of the case, either as the result of direct personal participation in the investigation, or from verbal or written reports provided to me by other FBI agents or law enforcement officers who have participated in the investigation.  In that regard, unless otherwise noted, wherever in this Affidavit Affiant asserts that a statement was made, the information was provided to Affiant by another FBI agent, law enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom Affiant or others have spoken or whose reports Affiant has read and reviewed.   Such statements are set forth in this Affidavit in substance or in pertinent part unless otherwise indicated.

3. Affiant is the case agent on this investigation and, as such, is fully familiar with the facts of the case, either as the result of direct personal participation in the investigation, or

from verbal or written reports provided to me by other FBI agents or law enforcement officers who have participated in the investigation. In that regard, unless otherwise noted, wherever in this Affidavit Affiant asserts that a statement was made, the information was provided to Affiant by another FBI agent, law enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom Affiant or others have spoken or whose reports Affiant has read and reviewed. Such statements are set forth in this Affidavit in substance or in pertinent part unless otherwise indicated. Furthermore, since this Affidavit is being submitted for the limited purpose of securing a criminal complaint, Affiant has not included the details of every aspect of the investigation. In so doing, Affiant notes that facts not set forth herein are not being relied on by Affiant in connection with this criminal complaint request.

4. MARCOS DEL VALLE, is a male, brown hair, brown eyes, born on xx/xx/1972, Ohio Driver's License Number XXXXXX, and currently residing at XXXX West 98th Street, Cleveland, Ohio[1]:

5. Affiant submits there is probable cause to believe that, from approximately 2007, through the present, in the Northern District of Ohio, and elsewhere, MARCOS DEL VALLE, committed fraud in connection with identification documents in violation of Title 18 U.S.C. Section 1028(a)(3). Affiant hereby requests the issuance of an arrest warrant for MARCOS DEL VALLE.

## PROBABLE CAUSE

---

1 The full date of birth, Ohio Driver's License number, and address are not being provided to protect the personal information of Marcos Del Valle.

2

## BACKGROUND OF INVESTIGATION

6.     Since approximately March 2017, the FBI and the United States Customs and Border Protection (USCBP) have been investigating a group in the Cleveland, Ohio area involved in the sale of legitimate Puerto Rican identification documents to unauthorized aliens. The unauthorized aliens, who are largely from Central America, utilize the Puerto Rican documents to take over the identity of Puerto Rican United States (US) citizens.   The documents are presented and utilized by imposters as proof of citizenship to obtain driver's licenses, loans, employment, public benefits, and to vote in elections.

7.     A review of Ohio Bureau of Motor Vehicle (BMV) records revealed that on April 26, 2017, Marcos Del Valle registered a 2012 Land Rover, Ohio Registration HDP-XXXX[2], in his name and indicated that his address was XXXX West 98th St., Cleveland, OH.

8.     In April 2017, Confidential Source (CS) 1, hereinafter referred to as CS-1[3], provided information regarding the unauthorized aliens using Puerto Rican documents to pose as United States citizens and the sale of Puerto Rican documents by Marcos Del Valle. Specifically, CS-1 identified that (s)he knows a document vendor in the Cleveland, Ohio area, Del Valle.   CS-1 explained that Del Valle claims to be able to get "anything you need."   CS-1 also provided agents with a list of twenty-three names or nicknames from his/her cellular

---

[2] The full Ohio Registration of vehicles described herein is not being provided to protect the personal information of the registered owners of the vehicles.

[3] CS-1 provided information to USCBP beginning in April 2017 following CS-1's detainment for immigration violations and eventual Federal prosecution.   CS-1 cooperated in order to receive consideration at sentencing.   CS-1's information concerning the group described in this affidavit has been corroborated by the investigation conducted to date, a search of CS-1's cellular telephone, surveillance, information provided by a second CS, and by records searches and telephone records analysis conducted by law enforcement agents/officers/analysts.   CS-1's information has never been found to be false or misleading.   For these reasons, Affiant considers CS-1's information to be reliable.

3

telephone of individuals known to CS-1 to be utilizing Puerto Rican documents to pose as United States Citizens.

9. In April 2017, CS-1 also reported that an unknown individual (at the time) from El Salvador, hereinafter referred to as Individual 1, is an unauthorized alien present in the United States who is illegally using Puerto Rican identification documents in the name of "R.P." to pose as a United States Citizen[4]. CS-1 reported that Individual 1 has an Ohio driver's license in the name of R.P. and that he has been posing as R.P. for eight to ten years. CS-1 further reported that Marcos Del Valle sold Individual 1 the Puerto Rican identification documents in the name of R.P. (in approximately 2007). As a result of additional investigation conducted by the USCBP which corroborated the information provided by CS-1, in October 2017, Individual 1 was arrested in the Northern District of Ohio and prosecuted federally for Title 18, United States Code, Section 911, False Personation of a United States Citizen, Section 1015(e), False Statement of Claim of Citizenship to Obtain a Federal or State Benefit, and Section 1028A(a)(1) Aggravated Identity Theft. Individual 1 was prosecuted for his utilization of the identification documents in the name of R.P. Affiant believes this corroborates the information provided by CS-1 that Individual 1 is illegally using the name and SSAN of R.P.

10. In April 2017, CS-1 advised that another unknown individual from El Salvador, hereinafter referred to as Individual 2, was an unauthorized alien and that he was in the United States illegally. CS-1 identified the alias of Individual 2 as "J.R." CS-1 further described the residence and employment of Individual 2 and advised that Marcos Del Valle sold the documents

---

[4] CS-1 identified a full name for the alias described as "R.P." herein. However, for this alias and additional aliases set forth herein, only initials will be utilized.

4

to Individual 2.  As a result of additional investigation conducted by the USCBP which corroborated the information provided by CS-1, in September 2017, Individual 2 was arrested in Cleveland, Ohio and prosecuted federally for Title 18, United States Code, Section 911, False Personation of a United States Citizen, Section 1015(e), False Statement of Claim of Citizenship to Obtain a Federal or State Benefit, and Section 1028A(a)(1) Aggravated Identity Theft.  Individual 2 was prosecuted for his utilization of the identification documents in the name of J.R.  Individual 2's true identity was identified as Juan Carlos Amaya Melendez.

11. In May 2018, CS-2[5] was interviewed and advised that Marcos Del Valle was a vendor of genuine birth certificates from Puerto Rico and that Del Valle sold these documents to unauthorized aliens in the Cleveland, Ohio area.  CS-2 further reported that Del Valle was a citizen of the United States from Puerto Rico and that he was a member of a larger group of individuals involved in trafficking in identification documents.  CS-2 advised that Del Valle sold genuine birth certificates for US citizens from Puerto Rico for approximately $2,500 - $3,000.  CS-2 stated that the birth certificates came with a Social Security card.  CS-2 advised that CS-2 was in a position to be able to purchase documents from Del Valle.

12. On May 30, 2018, CS-2 reported that CS-2 sent Marcos Del Valle a message on Facebook.  Del Valle then responded on Facebook instructing CS-2 to call Del Valle.  CS-2 advised Del Valle that (s)he was unable to call at the moment and Del Valle sent CS-2 his

---

5  In May 2018, CS-2 began providing information to USCBP and the FBI in order to receive assistance with immigration benefits.   CS-2 has provided information in reference to the group described herein and another group involved in fraud.   CS-2's information concerning the group described in this affidavit has been corroborated by the investigation conducted to date, surveillance, information provided by another CS, consensually recorded conversations conducted by CS-2, and by records searches and telephone records analysis conducted by law enforcement agents/officers/analysts.   CS-2's information has not been found to be false or misleading.   For these reasons, Affiant considers CS-2's information to be reliable.

telephone number XXX-XXX-2724[6] and instructed CS-2 to call him when CS-2 was available.

13.     On June 11, 2018, CS-2 reported that previously, on June 3, 2018, CS-2 and Marcos Del Valle had a consensually recorded conversation[7] over XXX-XXX-2724.  During the phone call, CS-2 told Del Valle that (s)he wanted "papers."  Del Valle responded by stating, "Okay, but we need to talk in person."  Agents reviewed the translation of the consensually recorded conversation and determined that it corroborated CS-2's version of events.

14.     On July 6, 2018, CS-2 reported that on July 4, 2018, CS-2 traveled to Marcos Del Valle's residence, XXXX West 98th St., Cleveland, OH in order to speak with Del Valle regarding obtaining "documents." During the meeting, which was consensually recorded, Del Valle told CS-2 that someone was snitching and others were stating that CS-2 was snitching. CS-2 denied "snitching" and stated that (s)he was "Chapano," not that kind of person. Del Valle asked CS-2 if (s)he was wearing a wire and asked to touch CS-2's pockets. CS-2 did not allow Del Valle and told him that the only thing CS-2 possessed was his/her phone and keys.  Del Valle told CS-2 that he no longer "does that" (obtains documents for others) because of the problems (several USCBP enforcement actions that occurred recently).  However, Del Valle told CS-2 that he will help CS-2 to obtain some documents because they are friends. CS-2 asked

---

[6] The full telephone number is not being provided to protect the personal information of Marcos Del Valle.  On October 31, 2019, the Honorable United States Magistrate Judge William H. Baughman, Jr. signed a warrant authorizing the search of the cell phone associated with this telephone number.  On July 5, 2018, the Honorable United States Magistrate Judge David A. Ruiz signed a 2703(d) court order requesting subscriber and other information for XXX-XXX-2724 from AT&T.  A review of the records obtained from AT&T pursuant to the court order revealed that the subscriber for XXX-XXX-2724 is Marcos Del Valle.

[7] A consensually recorded conversation occurs when one party to the conversation (i.e. an FBI CS) has a phone conversation, or meets with a target of an investigation, and records the phone call/meeting without the target's knowledge.  The consenting party is usually provided with an FBI recorder for the purpose of making consensually recorded conversations.  Following the recording, agents usually meet with the consenting party, retrieve the recorder, download its' contents, and review the recording.

Del Valle the price and Del Valle told CS-2 that CS-2 knows the price. CS-2 believes the price to be $2,500. Del Valle asked CS-2 how old the individual should be and CS-2 told Del Valle "thirty-one years old."  Agents reviewed the translation of the conversation and determined that it corroborated CS-2's version of the events.

15. On September 19, 2018, CS-2 reported that (s)he and Marcos Del Valle exchanged text messages over XXX-XXX-2724.  CS-2 reported that Del Valle agreed to assist CS-2 in obtaining "papers."  CS-2 further reported that Del Valle told CS-2 that he wants half of the funds up-front.  CS-2 forwarded agents screenshots of the text messages.

16. On November 19, 2018, CS-2 reported that Marcos Del Valle reached out to CS-2 during the weekend of November 17/18, 2018 by phone over XXX-XXX-2724.  CS-2 and Del Valle thereafter had a recorded phone conversation during which Del Valle told CS-2 that he had the "docs" and they cost $1,500.  CS-2 then told Del Valle that (s)he didn't have the money yet but that (s)he would soon.

17. During the day on December 4, 2018, Marcos Del Valle and CS-2 exchanged several text messages over XXX-XXX-2724 in reference to Del Valle and CS-2 meeting in the mid-afternoon. At 2:28 p.m. on December 4, 2018, CS-2 reported that (s)he had placed a consensually recorded phone call to Del Valle over XXX-XXX-2724 and they agreed to meet shortly at a predetermined location in Cleveland, Ohio, hereinafter referred to as Target Location 1. At 3:07 p.m., agents conducting surveillance at Target Location 1 identified CS-2 walking in the parking lot.  Shortly thereafter, a black Land Rover was observed parking near CS-2's location.  As set forth in paragraph 12, the investigation conducted to date has identified that Del Valle has a dark colored Land Rover registered to Del Valle, Ohio Registration HDP-

7

XXXX.  Although agents did not observe the registration of the Land Rover while it was at Target Location 1, agents believed that the Land Rover observed in the parking lot of Target Location 1 was identical in appearance to the Land Rover registered to Del Valle which agents had previously observed at Del Valle's residence.   At approximately 3:11 p.m., agents observed CS-2 sitting in the front passenger seat of the black Land Rover.

18. At 3:15 p.m. on December 4, 2018, CS-2 called agents and advised that the meeting was over. CS-2 was thereafter met, debriefed, and provided the following information: CS-2 advised that Marcos Del Valle was driving a black Land Rover and they met in the parking lot of Target Location 1. Del Valle told CS-2 that he wants half the money up-front which he will then send to Puerto Rico and he will talk to someone in order to obtain documents for CS-2. After approximately 2 – 3 days, Del Valle will then receive the documents and provide them to CS-2. CS-2 will be provided a Puerto Rican birth certificate and a Social Security card. CS-2 told Del Valle that (s)he doesn't want to provide Del Valle with $750 (half the funds upfront) and then end up losing the money.   Del Valle assured CS-2 that CS-2 would not lose the money. CS-2 told Del Valle that CS-2 wanted to think about it and then CS-2 will get back to Del Valle.   At the conclusion of the interview, agents took photographs of CS-2's text messages with Del Valle and call logs.   Agents reviewed the translation of the conversation, text messages, and call logs and determined that they corroborated CS-2's version of the events.

19. Between December 6, 2018 and the morning of December 7, 2018, CS-2 and Marcos Del Valle exchanged communications over XXX-XXX-2724 arranging to meet for CS-2 to provide Marcos Del Valle with half of the funds.   At approximately 11:15 a.m. on December 7, 2018, CS-2 reported that Del Valle called CS-2 and told him that he was already at the

8

meeting location, Target Location 1. Del Valle told CS-2 to hurry up and to think hard about what CS-2 is about to do.

20. At 11:33 a.m. on December 7, 2018, CS-2 was provided with one audio/video recorder and one audio recorder which were activated and a preamble was stated by agents. Prior to departing, CS-2 was provided with $750 of US currency his/her person was searched and no contraband was found. CS-2 possessed $190 of US currency. CS-2 was provided with $10 of his/her currency (1 - $5 and 5 - $1 s) and the remaining $180 was held by agents for the duration of his meeting with Marcos Del Valle. At approximately 11:35 a.m., CS-2 departed for Target Location 1 on foot. At 11:48 a.m., agents observed CS-2 at Target Location 1. At 11:50 a.m., a black Land Rover later identified by agents as being driven by Del Valle as set forth in the following paragraph was observed to arrive at the parking lot of Target Location 1. CS-2 was observed by agents to enter the black Land Rover and the Land Rover was observed to drive towards the north end of the parking lot.

21. At 11:59 a.m. on December 7, 2018, the black Land Rover was observed to drive south in the parking lot and park near the entrance to Target Location 1. CS-2 was observed to open the door and talk with the driver through the open door for approximately one minute before CS-2 departed on foot. After CS-2's departure, an individual believed by Affiant to be Marcos Del Valle (based upon a review of his driver's license photograph by Affiant) wearing a grey jacket and blue jeans exited the Land Rover and entered the Target Location 1. Surveillance of Del Valle was thereafter discontinued and agents surveilled CS-2 until (s)he was later met at a predetermined location.

22. At 12:06 p.m. on December 7, 2018, Marcos Del Valle was observed by agents

9

traveling east on Memphis Avenue in the direction of his residence. At approximately 12:10 p.m., CS-2 was met at a predetermined location and the recorders were deactivated. CS-2 was searched by Affiant and was not found to be in possession of any currency besides the $10 CS-2 previously possessed or any contraband.

23. On December 7, 2018, CS-2 provided the following information which occurred during CS-2's meeting with Marcos Del Valle: Del Valle told CS-2 that others are scared to sell documents because the "El Salvadorian" guy was caught. CS-2 believed that Del Valle was referring to J.R. who was prosecuted in September 2017 as set forth in paragraph 15. Del Valle told CS-2 that the brothers of the "El Salvadorian" guy are stating that CS-2 and others are talking. Del Valle told CS-2 that the "El Salvadorian" guy's brothers are scared because they believe Del Valle is the reason they got caught. Del Valle stated that he previously did business with the "El Salvadorian" guy. Del Valle told CS-2 that Walter[8] is one of the brothers of the guy who got caught. CS-2 told Del Valle that CS-2 had nothing to say about Del Valle. Del Valle further warned CS-2 not to record him and CS-2 told Del Valle that CS-2 had no reason to record Del Valle. CS-2 provided Del Valle with $750 of US currency provided to CS-2 by the agents for the purchase of documents. Del Valle told CS-2 that he would have the documents for CS-2 by next Wednesday. Del Valle asked CS-2 what age CS-2 needed, 25, 30, or 35. CS-2 asked Del Valle what kind of documents he has now and Del Valle told CS-2 that he has birth certificates and Social Security Account Cards. CS-2 told Del Valle that CS-2 was not working at the time and that CS-2 wanted to make money any way possible (selling documents). CS-2 told Del Valle that (s)he knew of others trying to obtain documents. At the conclusion of the interview, agents

---

8 The full name is known to the Affiant, however, to protect the individual's identity, only his first name is used.

took photographs of CS-2's text messages with Del Valle and call logs.   Agents reviewed the translation of the conversation, text messages, and call logs and determined that they corroborated CS-2's version of the events.

24. A further review of the translation of the meeting between CS-2 and Del Valle on December 7, 2018, reveals that at the end of the meeting, Del Valle told CS-2 that he was going to send the money "now" through Western Union from Dave's (Supermarket).

25. On the morning of December 18, 2018, CS-2 and Del Valle exchanged numerous text messages and phone calls over XXX-XXX-2724 arranging to meet at Target Location 1 in order to complete the purchase of the identification documents.   On December 18, 2018, at 11:52 a.m., CS-2 was provided with one audio/video recorder and one audio recorder which were activated and a preamble was stated by agents. Prior to departing, CS-2 was provided with $750 of US currency his/her person was searched and no contraband was found. CS-2 possessed $15 (three $5 s) of US currency. CS-2 was allowed to keep his/her currency for the duration of his meeting with Marcos Del Valle. At approximately 11:53 a.m., CS-2 departed for Target Location 1 on foot and agents watched CS-2 travel directly to Target Location 1. At 11:59 a.m., CS-2 was observed entering the Sav A Lot across the street from the Target Location 1 by agents.

26. On December 18, 2018 at 12:12 p.m., a black Land Rover, Ohio Registration HDP-XXXX, registered to Del Valle, was observed to arrive at the parking lot of Target Location 1.   Del Valle was wearing a red jacket. CS-2 was observed to enter the black Land Rover and the Land Rover was observed to drive towards the north end of the parking lot. Agents conducted surveillance of the black Land Rover following the meeting at Target Location

1 during which Del Valle was positively identified as the driver of the Land Rover. Del Valle, operating the Land Rover, was observed to travel to Sam's Club on Brookpark Road in Cleveland, Ohio where Del Valle shopped. Thereafter, Del Valle, operating the black Land Rover, was followed to his residence where he was observed to arrive at 2:02 p.m.

27. On December 18, 2018 at 12:18 p.m., CS-2 was observed exiting the Land Rover. The Land Rover then departed. At 12:23 p.m., CS-2 was met at a predetermined location and the recorders were deactivated. CS-2 was observed from the time CS-2 departed the Land Rover at Target Location 1 until CS-2 was met at the predetermined location. CS-2 was searched by agents and was found in possession of $8 in currency and a receipt for $7 from Sav A Lot. CS-2 provided agents with a Puerto Rican birth certificate and Social Security Account Card in the name of A.O.G.[9] Affiant notes that Del Valle unlawfully transferred two of six identification documents as set forth in Title 18, U.S.C., Section 1028(a)(3).

28. On December 18, 2018, CS-2, thereafter, provided the following information which occurred during CS-2's meeting with Del Valle: CS-2 provided Del Valle with $750 and Del Valle counted the money. Del Valle also asked CS-2 if CS-2 was going to give Del Valle a tip. Del Valle gave CS-2 the Puerto Rican birth certificate and Social Security Account Card in the name of A.O.G. which CS-2 later provided to agents. CS-2 told Del Valle that he knows some other guys who may need documents. Del Valle told CS-2 that would be fine and that he would get in contact with whomever. At the conclusion of the interview, agents took photographs of CS-2's text messages with Del Valle and call logs. Agents reviewed the

---

[9] The full name on the documents is known to the Affiant. However, only the initials of the individuals on the documents sold to CS-2 will be used throughout to protect the individuals' identities.

12

translation of the conversation, text messages, and call logs and determined that they corroborated CS-2's version of the events.

29. Between April 2, 2019 and April 4, 2019, Marcos Del Valle and CS-2 exchanged several text messages and consensually recorded phone calls over XXX-XXX-2724 in reference to Del Valle and CS-2 meeting at 2 p.m on April 4, 2019 in order for CS-2 to provide Del Valle with a down payment on the purchase of an additional set of identification documents.  At 1:38 p.m. on April 4, 2019, CS-2 placed a phone call to Del Valle which was not answered. CS-2 then sent a text message to Del Valle regarding meeting.  The planned meeting location was another predetermined location in Cleveland, Ohio, hereinafter referred to as Target Location 2.

30. On April 4, 2019, at 1:46 p.m., CS-2 was provided with one audio/video recorder and one audio recorder which were activated and a preamble was stated by agents.  Prior to departing, CS-2 was provided with $700 of US currency and his/her person and vehicle were searched and no contraband was found. CS-2 possessed $20 of US currency which CS-2 provided to agents for the duration of CS-2's meeting with Marcos Del Valle. At approximately 1:46 p.m., CS-2 departed for Target Location 2 in CS-2's vehicle and was followed directly to Target Location 2. CS-2 arrived at Target Location 2 at 2:02 p.m. Surveillance was maintained of CS-2 and his/her vehicle by agents the entire time CS-2 was at Target Location 2. At 2:03 p.m., CS-2 called agents and advised that CS-2 had spoken with Del Valle on the telephone and Del Valle advised CS-2 that he was in court, court was delayed, but Del Valle was on his way. At 4:00 p.m., a maroon Mitsubishi Montero arrived and parked next to CS-2's vehicle. CS-2 was observed exiting CS-2's vehicle and entering the passenger side of the Mitsubishi Montero. Del Valle was observed to depart his residence by agents at 1:05 p.m. on April 4, 2019 in a Maroon

13

Mitsubishi Montero, Ohio Registration HJQ-XXXX registered to a female. Surveillance of the vehicle/Del Valle was conducted by agents from the time it departed his residence being driven by Del Valle until it arrived at Target Location 2 at 4:00 p.m. During that time, agents identified Del Valle as the individual operating the Mitsubishi Montero.

31. On April 4, 2019, at 4:02 p.m., CS-2 was observed exiting the Mitsubishi Montero and returning to CS-2's vehicle. CS-2's vehicle and the Mitsubishi Montero were thereafter observed to depart. At 4:15 p.m., CS-2 was again met at a predetermined location and the recorders were deactivated. CS-2 and CS-2's vehicle were searched by agents and were not found in possession of any currency or contraband.

32. On April 4, 2019, CS-2, thereafter, provided the following information: During the meeting, Marcos Del Valle asked CS-2 about his/her driver's license because Del Valle observed CS-2 driving. Del Valle asked CS-2 to show Del Valle his/her driver's license. CS-2 stated, "No you are crazy, if I show you, I lose." Del Valle and CS-2 then both laughed. CS-2 told Del Valle that (s)he has another friend who needs papers. Del Valle stated, "Okay, but first I need to send this money to get this set of papers." CS-2 provided Del Valle with the $700 provided to CS-2 by agents. Del Valle counted the funds. Del Valle told/asked CS-2 that when he brings the papers, CS-2 is going to bring another $700. CS-2 then corrected Del Valle stating that the cost is $1,300. Del Valle then stated that he needed to make some for himself and laughed. CS-2 and Del Valle did not discuss when Del Valle was going to provide the documents. At the conclusion of the interview, agents took photographs of CS-2's text messages with Del Valle and call logs. Agents reviewed the translation of the conversation, text messages, and call logs and determined that they corroborated CS-2's version of the events.

14

33. On May 3, 2019, CS-2 reported that in a recorded phone conversation Marcos Del Valle told CS-2 that the ordered documents arrived but that they were in a female's name. Agents reviewed the translation of the phone call and determined that Del Valle told CS-2 that Del Valle "opened the package yesterday" and its contents is for a women. CS-2 told Del Valle that (s)he will check and see if his/her friend wants it.

34. On May 3, 2019, CS-2 and Del Valle met in person and CS-2 consensually recorded the conversation. During the meeting, Del Valle told CS-2 that he needed an additional $300 down payment to facilitate the delivery of the previously ordered male documents. Del Valle also asked CS-2 to help "move" or sell the female documents. CS-2 negotiated with Del Valle to pay $900 for the female documents at the time CS-2 paid the additional $300 down payment for the previously ordered male documents. Agents reviewed the translation of the conversation and determined that it corroborated CS-2's version of the events.

35. A further review of the Friday, May 3, 2019, consensually recorded meeting identified that Marcos Del Valle told CS-2 that the documents (for the man) should arrive by Monday or Tuesday. However, Del Valle and CS-2 further discussed that Del Valle first needs to send $400 in order to receive the documents. Del Valle further advised that he spoke with "him" and that they (the male documents) are ready and he already has them. Affiant believes that Del Valle was referring to his source of documents. In reference to the female documents, Del Valle told CS-2 that he offered the documents to a female friend but she declined. Del Valle continued by advising that it is a new thing to obtain a women's documents, obtain an identification card from the BMV, and then file for food stamps, Medicare, and other benefits.

15

Del Valle continued by advising that Isabel (Last Name Unknown) has done it three times.

36. Between May 6, 2019 and the afternoon of May 7, 2019, CS-2 and Marcos Del Valle exchanged numerous text messages and phone calls over XXX-XXX-2724 arranging to meet at another predetermined location in Cleveland, Ohio, hereinafter referred to as Target Location 3. The purpose of the meeting was to complete the purchase of the identification documents and to provide a deposit on the purchase of additional identification documents.

37. At 2:11 p.m. on May 7, 2019, CS-2 was provided with one audio/video recorder and one audio recorder which were activated and a preamble was stated by agents. Prior to departing, CS-2 was provided with $1,200 of US currency, his/her person and vehicle were searched and no contraband was found. CS-2 possessed $23 of US currency which was kept by agents for the duration of CS-2's meeting with Del Valle. At approximately 2:15 p.m., CS-2 departed for Target Location 3 and was followed by agents as CS-2 traveled to Target Location 3. At 2:20 p.m., CS-2 was observed arriving at Target Location 3.

38. At 2:27 p.m. on May 7, 2019, CS-2 was observed departing the Target Location 3. CS-2 was thereafter followed to a predetermined location. At 2:34 p.m., CS-2 was met at a predetermined location and the recorders were deactivated. CS-2 was observed from the time CS-2 departed until CS-2 was met at the predetermined location. CS-2's person and vehicle were searched by agents and CS-2 was not found in possession of any currency or contraband. CS-2 provided agents with a Puerto Rican birth certificate and Social Security Account Card in the name of X.S.C. Affiant notes that Del Valle unlawfully transferred two additional identification documents (three and four) as set forth in Title 18, U.S.C., Section 1028(a)(3). As set forth in paragraph 27, Affiant believes that on December 18, 2018, Del Valle unlawfully transferred two

16

identification documents (one and two) as set forth in Title 18, U.S.C., Section 1028(a)(3).

39.     On May 7, 2019, CS-2, thereafter, provided the following information which occurred during CS-2's meeting with Marcos Del Valle: Upon arriving at Target Location 3, CS-2 parked in front of a green truck.  CS-2 then called Del Valle because Del Valle was not there yet.  Del Valle told CS-2 that he was on the way.  Thereafter, CS-2 observed Del Valle walking and he got into CS-2's car.  CS-2 did not see Del Valle exit from a vehicle.  CS-2 gave Del Valle $1,200.  Del Valle did the math and advised CS-2 that CS-2 only owed Del Valle $300 for the next set of documents.  Del Valle provided CS-2 with a birth certificate and Social Security Account Card of X.S.C.  CS-2 told Del Valle that they looked different and Del Valle told CS-2 that it was the new one.  Del Valle stated/questioned CS-2, you are not recording, are you?  CS-2 stated, "no man, this is making money for me."  Del Valle told CS-2 that he will try and send the money today and that he should have the papers in 2 – 3 days.  At the conclusion of the interview, agents took photographs of CS-2's text messages with Del Valle and call logs.  Agents reviewed the translation of the conversation, text messages, and call logs and determined that they corroborated CS-2's version of the events.

40.     Between May 17, 2019 and May 20, 2019, Marcos Del Valle and CS-2 exchanged several text messages and telephone conversations over several days leading up to Del Valle and CS-2's meeting on May 20, 2019.  The purpose of the meeting was for CS-2 to obtain a set of identification documents from Del Valle.  At approximately 1:44 p.m. on May 20, 2019, CS-2 placed a recorded phone call to Del Valle wherein Del Valle instructed CS-2 to meet him at his residence.

41.     At approximately 1:56 p.m. on May 20, 2019, CS-2 was provided with one

17

audio/video recorder which was activated and a preamble was stated by agents. Prior to departing, CS-2 was provided with $300 of US currency and his/her person and vehicle were searched and no contraband was found. CS-2 possessed $15 of US currency which CS-2 provided to agents for the duration of CS-2's meeting with Marcos Del Valle. At approximately 1:58 p.m., CS-2 departed for Del Valle's residence in CS-2's vehicle and was followed directly to Del Valle's residence.  CS-2 arrived at Del Valle's residence at approximately 2:00 p.m. Surveillance was maintained of CS-2 by agents the entire time CS-2 was at the target location. Agents observed an individual matching Del Valle's description approach CS-2's vehicle in the driveway. CS-2 and the individual matching Del Valle's description appeared to speak through the passenger side window of the vehicle.

42.     At approximately 2:08 p.m. on May 20, 2019, CS-2 departed Del Valle's residence.  CS-2 was followed directly to a predetermined meeting location where the audio/video recording equipment was deactivated. CS-2 provided agents with a small brown bag containing a birth certificate and social security card for W.A.C.  CS-2 stated that when CS-2 arrived at Del Valle's residence, Del Valle was in his garage with other unknown individuals. Del Valle approached CS-2's vehicle directly from the garage and pulled the purchased documents from his pocket.  At the conclusion of the meeting with CS-2, agents took photographs of CS-2's text messages with Del Valle and call logs.  Agents reviewed the translation of the conversation, text messages, and call logs and determined that they corroborated CS-2's version of the events.  Affiant notes that Del Valle unlawfully transferred two additional identification documents (five and six) as set forth in Title 18, U.S.C., Section 1028(a)(3).  As set forth in paragraph 27, Affiant believes that on December 18, 2018, Del Valle

18

unlawfully transferred two identification documents (one and two) as set forth in Title 18, U.S.C., Section 1028(a)(3).   As set forth in paragraph 38, Affiant believes that on May 7, 2019, Del Valle unlawfully transferred two identification documents (three and four) as set forth in Title 18, U.S.C., Section 1028(a)(3).

     43.     On October 9, 2019 CS-2 send a text message to Del Valle and asked if CS-2 could purchase additional documents.   Del Valle subsequently called CS-2 and told CS-2 that he spoke with his contact and the contact was ready.   Del Valle also told CS-2 that he would require half of the purchase price up front.   After that conversation, CS-2 sent additional text messages to Del Valle and asked if the identification documents would be for a male, like the last time.   Del Valle responded "whatever you need."

## CONCLUSION

44. Based on aforementioned factual information, your Affiant respectfully submits that there is probable cause to believe that MARCOS DEL VALLE committed fraud in connection with identification documents in violation of Title 18 U.S.C. § 1028(a)(3).

*Special Agent Steven B. Farnsworth, FBI*

Sworn to via telephone after submission by reliable electronic means. Crim.Rules. 4.1; 41(d)(3)



*Thomas M. Parker*
United States Magistrate Judge
3:16 PM, Nov 12, 2019